DENISE A. PENN, et al.,

    Plaintiffs,

v.                       Civil Action No. 3:17-cv-758

1ST SOUTHERN INSURANCE
SERVICES, INC., et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (ECF No. 7). For the following reasons, the motion will be granted.

## BACKGROUND

Plaintiffs Denise Penn and Houstonia Clymer filed this action against Defendants, 1st Southern Insurance Services, Inc., George Roberts, and Fran Pless, for their failure to procure proper insurance coverage for Jimmy Barker and Barker & Son Forestry Services, Inc. Defendants have moved for dismissal of the Complaint (ECF No. 1) pursuant to Fed. R. Civ. P. 12(b)(6).

## I.  Factual Context (As Set Forth in the Complaint)

The following factual overview is based on the allegations in the Complaint.

This case arises out of an insurance policy selected and placed

by Defendants on behalf of Jimmy Barker and Barker & Son Forestry Services, Inc. (collectively "Barker"). Compl. *1-3.

Defendants contracted with Barker to advise as to the kinds and amount of insurance that Barker had to purchase under applicable law (i.e., for a trucking business operating in at least four states) and to select and place that insurance. Compl. *6-8. Barker had no special experience in insurance matters and therefore relied entirely on Defendants and their promised expertise for the selection and placement of insurance. Compl. *4. Barker's reliance arose, at least in part, from Defendants' claimed experience in insuring truckers. Compl. *4. Defendants were aware that Barker counted on them to secure all required insurance. Compl. *5.

Nevertheless, Defendants selected and placed a policy that did not meet mandatory minimum financial responsibility federal trucking standards. Compl. *5. That policy did not contain a MCS-90 endorsement, and it failed to satisfy coverage minimums. Compl. *5. As to the latter deficiency, the minimum financial responsibility protection required under federal law is $750,000 in liability coverage, but the policy provided only $100,000. Compl. *2.

Penn and Clymer were severely injured in an accident caused by Justin Colvard, while he was driving a truck for Barker. Compl. *2. That accident occurred while the policy at issue here was in effect. See Compl. *2-5. Thereafter, Penn and Clymer secured judgments

2

against the Barker & Son business in the Circuit Court of Brunswick County, Virginia. Compl. *2. Penn was awarded damages in the amount of $2,450,000. Compl. *2. Clymer was awarded damages in the amount of $275,000. Compl. *2.

The insurer refused to pay the additional amount required to meet minimum insurance standards under federal law ($650,000). See Compl. *2-3. Barker, therefore, assigned all of its rights against Defendants to Penn and Clymer, who now sue Defendants for their failure to provide proper guidance and for failure to obtain proper coverage for Barker. Compl. *2-3.

## II. Additional Factual Context

Defendants allege that the Complaint omits a substantial amount of relevant information. Defs.' Br. 2, 4-5. This information is discussed here, although whether it can be considered in resolving Defendants' motion shall be addressed below.

Defendants observe that the policy at issue was "procured and issued in 2004 for a policy period that terminated in 2005." Defs.' Br. 2. Furthermore, they claim that the accident in which Penn and Clymer were injured occurred on August 2, 2005. Defs.' Br. 2, 4-5. And, they note that the policy at issue was previously considered by this Court in a declaratory judgment action in 2007 (to which Penn and Clymer were parties). See Defs.' Br. 5. In a ruling affirmed by the Fourth Circuit in 2009, this Court found that the policy provided

only $100,000 in liability coverage. See Defs.' Br. 2, 5. To support those factual claims, Defendants attach as exhibits: (1) the declarations pages of the policy at issue; (2) the complaint in the declaratory judgment action (which itself includes a copy of the policy); (3) the answers filed by Penn and Clymer in that action; (4) the district court's final order in that action; and (5) the Fourth Circuit's opinion affirming the district court's ruling. See Defs.' Br. 2, 2 n.1, 4-5; Defs.' Br. Exs. A-F.[1]

## III. Procedural History

The procedural history in this case is short. Penn and Clymer filed their Complaint on November 11, 2017. They alleged six claims: Count I-breach of contract; Count II-breach of oral contract; Count III-breach of implied contract; Count IV-negligence; Count V-professional negligence; and Count VI-direct negligence (against Penn and Clymer personally). After Defendants filed their motion to dismiss, Counts IV (negligence) and VI (direct negligence) were dismissed by agreement. ORDER (ECF No. 20).

---

[1] Defendants also submitted other documents in the record of the declaratory judgment action with their reply brief. Defs.' Reply Br. Exs. A-B.

## STANDARDS GOVERNING MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

The standards governing motions to dismiss under Fed. R. Civ. P. 12(b)(6) are clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." When ruling on a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.
>
> To survive a motion to dismiss, Plaintiffs' factual allegations, taken as true, must "state a claim to relief that is plausible on its face." The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." Although it is true that "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." Thus, we have emphasized that "a complaint is to be construed liberally so as to do substantial justice."

Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted).

### DISCUSSION

Defendants argue, _inter alia_, that all counts are barred by applicable statutes of limitations. See Defs.' Br. 2. The Court agrees and therefore grants Defendants' motion on that ground.

## I.  Choice of Law

A preliminary matter involves which state's law governs the relevant issues in this case. There is no dispute between the parties that Virginia law governs the statutes of limitations questions at issue here (including when a claim accrues), and the Court concurs in the parties' assessment. See Defs.' Br. 5; Pls.' Opp'n 4 n.8.

## II.  The Relevant Statutes of Limitations

Under Virginia law, for actions upon a written contract, the limitations period is five years. See Va. Code Ann. § 8.01-246(2). For actions upon an unwritten contract, the statute of limitations is three years. See id. § 8.01-246(4). For professional negligence claims, the limitations period is the same as for breach of contract. See Browning v. Tiger's Eye Benefits Consulting, 313 F. App'x 656, 664 (4th Cir. 2009); White v. BB & T Ins. Servs., Inc., 7:10-cv-467, 2012 WL 3018048, at *5, 7 (W.D. Va. July 23, 2012).

The remaining claims involve only breach of contract and professional negligence. Consequently, the applicable limitations period is, at most, five years. The parties do not dispute this conclusion. See Defs.' Br. 7-8, 13; Pls.' Opp'n 4 n.8.

## III. Accrual

### A. The Parties' Arguments

The main dispute in this case involves when the claims accrued. Defendants argue that the statutes of limitations began to run no later than 2004, when the inadequate policy was issued. Defs.' Br. 8, 12-13. They also note that, even using the date of Penn and Clymer's accident (in 2005) or the date that the declaratory judgment action was resolved (in 2009) as the accrual date, Penn and Clymer's claims are time barred. See Defs.' Br. 9, 12-13.

Penn and Clymer respond that injury is necessary for a claim to accrue, and they contend that no injury occurred until the judgments in their favor were entered against Barker & Son (less than one year before this action was filed) because, before that time, the insurer provided all that it had promised (by satisfying its duty to defend). See Pls.' Opp'n 5-12.

Defendants reply that injury occurred when the improper policy was issued. See Defs.' Reply Br. 5-10. They also note that Penn and Clymer suffered another injury in 2005, when the accident occurred, because after that date Barker could not secure proper insurance to cover the accident. Defs.' Reply Br. 9. And, they observe that Penn and Clymer were again injured in 2009 when it was conclusively determined that the policy provided only $100,000 in coverage. Defs.' Reply Br. 9. In short, Penn and Clymer suffered several injuries that

triggered accrual long enough ago to render the claims untimely.

**B.  Virginia Accrual Law**

**1.   Va. Code Ann. § 8.01-230**

The core of Virginia accrual law is Va. Code Ann. § 8.01-230.

That provision states:

> In every action for which a limitation period is prescribed, the right of action shall <u>be deemed to accrue</u> <u>and the prescribed limitation period shall begin to run from</u> the <u>date the injury</u> is sustained in the case of <u>injury</u> to the <u>person</u> or damage to property, <u>when</u> the <u>breach of contract occurs</u> in <u>actions ex contractu</u> <u>and not when the resulting damage</u> is <u>discovered</u>, except where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.

Va. Code Ann. § 8.01-230 (emphasis added).[2]

**2.   Applicable Case Law & Accrual Standards**

Although Va. Code Ann. § 8.01-230 provides basic guidance as to Virginia accrual law, Virginia decisional law has set forth the principles that control the resolution of the accrual question here.

**i.   The Necessity of Injury**

As an initial matter, the parties are correct that an "injury" is necessary for a claim to accrue under Virginia law (even as to contract-oriented or professional negligence claims). <u>See</u> <u>Hensel Phelps Constr. Co. v. Thompson Masonry Contractor, Inc.</u>, 791 S.E.2d

---

[2] The "exception" clause is not relevant here.

734, 740 (Va. 2016); Thorsen v. Richmond SPCA, 786 S.E.2d 453, 465 (Va. 2016); Van Dam v. Gay, 699 S.E.2d 480, 482-83 (Va. 2010). And, "a statute of limitations usually commences to run when injury is incurred as a result of a wrongful act." Kiser v. A.W. Chesterton Co., 736 S.E.2d 910, 916 (Va. 2013).

### ii. Injury Sufficient for Accrual

Although injury is necessary for a claim to accrue, the relevant injury need not be substantial in degree or easy to discover. As the Supreme Court of Virginia has explained:

> Some injury or damage, however slight, is essential to a cause of action, but it is immaterial that all the damages resulting from the injury do not occur at the time of the injury. The running of the limitation period will not be tolled by the fact that actual or substantial damages did not occur until a later date. Difficulty in ascertaining the existence of a cause of action is similarly irrelevant.

Van Dam, 699 S.E.2d at 482-83.

In accordance with this principle, the Supreme Court of Virginia has held, on numerous occasions, that measurable or meaningful damages are not necessary for claims to accrue. Rather, any fixed injury is sufficient.

For example, in Van Dam, an attorney negotiated a divorce property settlement that allocated the husband's survivor benefits from his federal retirement pay to his wife. Van Dam, 699 S.E.2d at 480. That settlement was incorporated into the final divorce decree,

but the wife was ultimately denied the survivor benefits under federal law. Id. In a legal malpractice action against the attorney, the Supreme Court of Virginia held that "the plaintiff suffered a legal injury arising out of the defendant's malpractice when the final decree of divorce, incorporating the defective property settlement agreement, was entered by the circuit court," not, as the plaintiff argued, on "the death of her former husband in 2006, when her right to survivors' benefits would have arisen but for the defendant's malpractice." Id. at 481-82.[3] As the Supreme Court of Virginia later explained, "[a]lthough the plaintiff in Van Dam similarly suffered primary monetary damage at the time of her ex-husband's death due to lost survivor benefits, the Court found some initial injury took place at the time the divorce decree was entered," which was "when the parties' rights were fixed." Thorsen, 786 S.E.2d at 466.

The Thorsen and Van Dam courts also discussed an earlier legal malpractice case, MacLellan v. Throckmorton, 367 S.E.2d 720 (Va. 1988). There, the plaintiff "received erroneous advice on his Property Settlement Agreement [(that provisions could be modified)], which was entered by the court as part of his divorce decree, but

---

[3] That is a harsh rule, but it is settled Virginia law. And, a federal court sitting in diversity is not authorized to revise state decisional law. Any change must be effected by the Supreme Court of Virginia or by the Commonwealth's legislators.

suffered monetarily from that harm only years later when his income changed." Thorsen, 786 S.E.2d at 466; Van Dam, 699 S.E.2d at 481. Again, however, "the statute of limitations on plaintiff's right of action ran from the entry of the divorce decree, when the parties' rights were fixed." Thorsen, 786 S.E.2d at 466. And:

> [The Supreme Court of Virginia] reached [the result in MacLellan] despite the fact that the plaintiff did not become aware of the malpractice until after the limitation period had run, and even if he had been aware of it in time, he would have then been unable to quantify his damages with precision. His injury arising from the attorney's malpractice occurred when the court entered a final decree of divorce incorporating a property settlement agreement that, contrary to the attorney's assurance, was not subject to change.

Van Dam, 699 S.E.2d at 482.

Likewise, in Hensel Phelps Construction Co. v. Thompson Masonry Contractor, Inc., 791 S.E.2d 734 (Va. 2016), subcontractors completed a construction project in a defective manner and were sued by the prime contractor after it was sued by the client. Id. at 736-37. The prime contractor argued that it "had no cause of action upon the breach of performance . . . until 2014," when the case against the prime contractor settled, because before that time it had "sustained no damages." Id. at 737-38, 740. The Supreme Court of Virginia found that argument to be unavailing, holding that:

> Under its subcontracts, had Hensel Phelps diligently attended to inferior work performed pursuant to its contract with the Commonwealth,

11

> it could have required subcontractors to fix any
> faulty or inferior work for five years following
> the breach in performance. This Court has
> recently reiterated that, "while some injury or
> damage, <u>however slight</u>, is required for a cause
> of action to accrue, 'it is immaterial that all
> the damages resulting from the injury do not
> occur at the time of the injury.'"

<u>Id.</u> at 740 (citations omitted). Thus, the prime contractor was harmed

by the subcontractors' inferior work under the subcontracts, even

if that inferior work did not cause meaningful damages until later.

Finally, in <u>Shipman v. Kruck</u>, 593 S.E.2d 319 (Va. 2004), an

attorney "erroneously assessed . . . trust documents as

establishing an irrevocable trust when he advised the Shipmans to

file bankruptcy," which resulted in the sale of his clients'

residence (and the clients' repurchase of it). <u>Id.</u> at 321. In a

malpractice action against the attorney, the clients argued that the

statute of limitations did not begin to run until "the bankruptcy

court finally adjudicated the Trust to be revocable and therefore

a nonexempt part of the Shipmans' bankruptcy estate . . . . because

until that point in time they had no injury or damages." <u>See</u> <u>id.</u> at

322. The Supreme Court of Virginia rejected that position:

> <u>Upon the filing of the bankruptcy petition
> the Shipmans incurred a legal injury</u>. Although
> the injury <u>could not be delineated as a sum
> certain or reflected as a final judgment</u> on the
> merits, <u>there was injury sufficient to commence
> a cause of action for legal malpractice</u>. First
> and foremost, the Shipmans lost control of their
> assets to the Bankruptcy Trustee, including the
> power to revoke the Trust and receive the

reversion. The filing of the bankruptcy, in and of itself, vested those rights in the Bankruptcy Trustee as a matter of law. This injury in particular countermanded their express wishes to protect the Trust property from their creditors. Even the Shipmans' right to bring a legal malpractice claim vested in the Bankruptcy Trustee, which necessitated their initial nonsuit. Further, the Shipmans admitted in their motion for judgment that in addition to the costs of repurchasing their residence, they incurred "additional costs in legal fees, litigation costs, <u>and other costs associated with the bankruptcy filing</u> and litigation."

<u>Id.</u> at 323 (emphasis added) (citations omitted).

### iii. When Accrual Occurs in the Failure to Procure Insurance Context

Because of the decisions of the Supreme Court of Virginia on the accrual/injury issue, numerous courts have taken the view that an action for failure to procure insurance accrues when a breach of the duty to procure insurance occurs, such as when a defective policy is placed, not when a payout under the intended policy would have vested.

One example is <u>Cunningham Bros. Used Auto Parts, Inc. v. Zurich American Insurance Co.</u>, 6:17-cv-51, 2017 WL 4707464 (W.D. Va. Oct. 19, 2017). There, the plaintiff's renewed insurance policy added an endorsement that left it with no coverage for a fire that disrupted business. <u>Id.</u> at *2. The plaintiff alleged that it had contracted with the insurer that provided the policy "because its agent promised that its coverage would be better at less cost than Plaintiff's

existing coverage," that a contract existed whereby the defendant (a third-party entity) "was responsible for servicing [the plaintiff's] insurance needs through [the insurer]," and that the defendant breached that contract by "failing to perform three duties: (1) alert [the plaintiff] of [the endorsement's] negative impact on its coverage; (2) prevent the endorsement from being added by having Plaintiff submit a statement of financial condition; and (3) ensure that [the plaintiff's] original coverage remained intact." Id. at *1-2 (citations omitted). The plaintiff argued that "there could have been no cause of action," and hence no running of the statute of limitations, "until there was actually harm to Plaintiff in the form of losing its expected insurance payout as a result of the loss." Id. at *3.

The district court, however, held that "the statute of limitations began running the moment the [renewed] insurance contract in effect was signed." Cunningham, 2017 WL 4707464, at *3-4. It observed that "the statute of limitations starts to run at the first sign of injury—no matter how slight or minor." Id. at *4. It took the view that the plaintiff was "injured" when the defendant "fail[ed] to adequately inform Plaintiff of the consequences of signing the insurance contract" and the plaintiff "lost its bargain to receive coverage equal to or better than what it had before." Id.

at *3-4.[4]

Likewise, in Mulvey Construction, Inc. v. Bituminous Casualty Corp., 571 F. App'x 150 (4th Cir. 2014), a third-party insurance agency issued certificates of insurance stating that two companies had been added to an existing insurance policy when, in fact, those companies had not been made additional insureds. Id. at 152-53. The insurer later refused to defend the two companies in a lawsuit, and one of the companies (and its insurer) sued for a declaratory judgment that they were entitled to coverage and payment. Id. at 153. The Fourth Circuit, by unpublished disposition, concluded that any breach of the contract requiring the third-party insurance agency to obtain insurance occurred no later than the date that the "final certificate of insurance—the contract Appellants assert required their being insured by [the insurer]—was issued" despite the fact that "Appellants were never added to the insurance." Id. at 162. The Court of Appeals based that conclusion on the fact that, "[u]nder Virginia law, the statute of limitations accrues on the date of breach, not the date of [sic] the resulting damage is discovered." Id. The Fourth Circuit, in essence, determined that injury occurred

---

[4] Penn and Clymer suggest that Cunningham was wrongly decided because it conflated a breach of duty with a breach of contract (which requires an injury) and never pointed to an actual injury. See Pls.' Opp'n 5, 17. However, Cunningham directly addressed the injury question, and, in fact, pointed to the injury that triggered the running of the statute of limitations. Cunningham, 2017 WL 4707464, at *3-4.

at the moment the contract that erroneously stated that the companies had been made additional insureds was issued by the third-party insurance agency. At that time, the contractual rights became fixed, and the companies lost the benefit of their agreement.[5]

Finally, in <u>Autumn Ridge, L.P. v. Acordia of Virginia Insurance Agency, Inc.</u>, 613 S.E.2d 435 (Va. 2005), an insurance broker failed to procure insurance that listed certain limited partnerships as named insureds. <u>Id.</u> at 436-38. The Supreme Court of Virginia held:

> that, when the intended insured suffers a loss, the measure of damages for failure to procure insurance is the amount that would have been due under the policy. However, when no loss has occurred, the measure of damages is the amount paid by the intended insured as the premium. "<u>In case of a failure to issue a policy, the right to recover is fully matured when the agreement is violated, and the party to whom it was to be issued is not obliged to wait until his property is destroyed . . . before instituting an action for damages.</u>"

<u>Id.</u> at 440 (emphasis added) (citations omitted).[6] Although <u>Autumn</u>

---

[5] <u>Cunningham</u> offered an abbreviated description of <u>Mulvey</u>, stating that "[t]he Fourth Circuit has held under similar facts that the three year statute of limitations begins to run the date the insurance contract in question is issued." <u>See Cunningham</u>, 2017 WL 4707464, at *3. It is probably more accurate to say that <u>Mulvey</u> held that the statute of limitations began to run from the date that the agreement to procure insurance was violated in a fixed manner. That does not change the overall correctness of the <u>Cunningham</u> opinion, and it is clear that an agreement to procure insurance <u>would</u> be violated in a fixed manner at the moment a deficient insurance policy is issued.

[6] The <u>Autumn Ridge</u> holding applied to both negligence and breach of contract claims. <u>See Autumn Ridge</u>, 613 S.E.2d at 440.

<u>Ridge</u> was not addressing a statute of limitations issue, the decision clearly informs the accrual question.[7]

### 3. Conclusion as to Accrual

In sum, it is clear that, for a claim to accrue, only a very slight injury is required. In the failure to procure insurance context, sufficient injury (and accrual) occurs when the duty to procure adequate insurance is violated in some fixed manner, such as when a deficient policy is signed or placed.

### C. Analysis

The position of Penn and Clymer that no claim accrued until the judgments were entered against Barker & Son cannot be supported, given the foregoing principles. Their primary argument is that "no injury happened pre-judgment" because the insurer never breached its duty to defend. Pls.' Opp'n 10-11. In particular, the argument seems

---

[7] Any doubt as to that conclusion is obviated by the source of the emphasized sentence in the block-quoted passage: <u>Everett v. O'Leary</u>, 95 N.W. 901, 902 (Minn. 1903). That case, and the emphasized sentence, <u>did</u> relate to when a claim for failure to procure insurance accrues. <u>Id.</u> And, the <u>Everett</u> court went on to clarify: "If, when a suit is brought, there has been no destruction by fire, the plaintiff can recover the amount paid as the premium; and, of course, such an action must be brought within the period of six years-a reasonable time being given in which to issue the policy. The person to whom the policy should have been issued may, however, take chances upon a loss, and, if one occurs, bring his action to recover actual damages; but his right to sue upon a breach of the contract, and consequently the time when that right matures, cannot be made to depend upon the fact of a loss. A cause of action accrues when the holder of the right to bring the action can apply to the court for relief, and is enabled to commence proceedings to enforce his rights, and from this time the statute of limitations is running." <u>Id.</u> at 902-03.

to be that, because monetary losses caused by Defendants' failure to procure the proper policy were contingent upon Barker <u>losing</u> in court (after being defended by the insurer), no injury occurred until Barker in fact lost.

That view, however, rests upon a misunderstanding of Virginia accrual law. As set out above, a claim accrues in the failure to procure insurance setting when a fixed violation of the duty to obtain insurance occurs, such as when a deficient insurance policy is issued. That is because only a slight injury as a result of the breach is necessary to trigger accrual. Loss of the "bargain to receive [the] coverage" sought is sufficient. See <u>Cunningham</u>, 2017 WL 4707464, at *3-4.

To be sure, <u>an</u> injury occurred once judgments were entered against Barker & Son and the insurer refused to pay more than the coverage limits of the inadequate policy. But, the <u>first</u> injury occurred when Defendants saddled Barker with an insurance policy that did not contain the terms that Barker had contracted with Defendants and relied on them to obtain. It was at that point that Defendants' duty to procure insurance was violated and fixed injury occurred (given that Barker was now bound by an insurance contract that did not meet its needs or expectations).

It is true that, as Penn and Clymer suggest, substantial damages were contingent until the judgments were entered. See Pls.' Opp'n

10-11. But, that is of no moment, for two reasons. First, the Supreme Court of Virginia has expressly held that, "[i]n case of a failure to issue a policy, the right to recover is fully matured when the agreement is violated, and the party to whom it was to be issued is not obliged to wait until his property is destroyed," i.e., until a covered loss occurs, "before instituting an action for damages." See Autumn Ridge, 613 S.E.2d at 440 (citations omitted). Thus, the "contingency" of a policy-triggering loss is irrelevant to when a claim for failure to procure insurance accrues.

Second, it is clear that slight injury (even that which "could not be delineated as a sum certain or reflected as a final judgment on the merits") is sufficient, notwithstanding that the lion's share of damages are contingent. See Shipman, 593 S.E.2d at 323. Hence, in Hensel Phelps, injury was found to have occurred when the subcontractors performed deficient work, even though monetary losses were contingent on whether the prime contractor would be sued and settle (or lose). Hensel Phelps, 791 S.E.2d at 736-37, 740. Likewise, in Van Dam, injury was found to have attached when the divorce decree was entered, even though the primary losses were contingent upon a later determination that the plaintiff was ineligible for her ex-husband's survivor rights. Van Dam, 699 S.E.2d at 480-82; see also Thorsen, 786 S.E.2d at 466. Similarly, in MacLellan, injury occurred when the divorce decree was entered, even though any substantive

damages were contingent upon the plaintiff's income changing and him seeking (in vain) to alter the agreement. See Thorsen, 786 S.E.2d at 466; Van Dam, 699 S.E.2d at 481-82. And, in Shipman, the plaintiff was injured "[u]pon the filing of the bankruptcy petition," even though any meaningful losses were contingent upon the bankruptcy court finding the trust at issue to be revocable. Shipman, 593 S.E.2d at 322-23.

In sum, the duty to procure insurance was breached and the first injury occurred when the legally insufficient policy was placed by Defendants. On that date, this action accrued within the meaning of Va. Code Ann. § 8.01-230, and the statutes of limitations began to run then.[8]

---

[8] Penn and Clymer argue that Shipman supports their view that the earliest possible injury was the entry of the judgments. See Pls.' Opp'n 11-12 ("Furthermore, in pointing to a judgment as enough injury to start the clock, the Supreme Court of Virginia through Shipman necessarily implied that the mere presence of facts potentially leading to a judgment would not constitute a sufficient injury."). That is erroneous. See Shipman, 593 S.E.2d at 323 ("Upon the filing of the bankruptcy petition the Shipmans incurred a legal injury. Although the injury could not be delineated as a sum certain or reflected as a final judgment on the merits, there was injury sufficient to commence a cause of action for legal malpractice." (emphasis added)). Shipman did state that "a client who suffers the entry of a judgment against him indeed suffers a legal injury or damage," but it never suggested that no injury can occur before a judgment. See id. at 325-27. And, it made that statement in the specific context of overturning a previous decision that had held that, in an action for legal malpractice, "[w]hen a client has suffered a judgment for money damages as the proximate result of his lawyer's negligence such judgment constitutes actual damages . . . only to the extent such judgment has been paid." Id.

## IV. Extrinsic Evidence & the Relevant Facts

### A. The Parties' Arguments

The second major dispute between the parties is whether the Court may rely upon extrinsic evidence to establish facts relevant to accrual, particularly the timelines applicable to the statutes of limitations issue. Defendants ask the Court to consider the documents attached to their brief. See Defs.' Br. 4. They point out, as set forth above, that "Plaintiffs do not provide a single date for any of [the relevant] events in their eleven-page Complaint." Defs.' Br. 2.

Penn and Clymer counter that "[t]he policy documents [Defendants] offer are not admitted as authentic or accurate by [Penn

---

(citations omitted). The court noted that the overturned case did not involve a statute of limitations issue and, in any case, was inconsistent with the rule that "even slight damage sustains a cause of action." See id. at 325-26. Penn and Clymer otherwise discuss Shipman at length and attempt to analogize their case to it, but, as set out above, the principles described in Shipman do not help them. See Pls.' Opp'n 7-11.

Additionally, Penn and Clymer point to Harris v. K & K Ins. Agency, Inc., 453 S.E.2d 284 (Va. 1995). See Pls.' Opp'n 14-16. They contend that it helps their position because the trial court in that case found that a claim accrued not when a flawed policy issued, but rather when an uncovered fire occurred, and the Supreme Court of Virginia did not question that conclusion. See Pls.' Opp'n 15. But, Harris involved certified questions to the Supreme Court of Virginia from the Fourth Circuit, so the Supreme Court of Virginia would not have addressed issues extraneous to the questions presented. See Harris, 453 S.E.2d at 285. And, in any event, the accrual date issue was never appealed to the Fourth Circuit. See Harris v. K & K Ins. Agency, Inc., 53 F.3d 328, 1995 WL 225531, at *2 (4th Cir. 1995) (table) (per curiam). Harris is not relevant.

and Clymer], and they never have been" (either in this action or the declaratory judgment action). Pls.' Opp'n 13-14. They suggest (but offer no support on the point) that it is possible that the policy was formally issued after coverage began. Pls.' Opp'n 13, 13 n.12. Thus, they claim, "at least a factual question remains as to when the policy here actually issued." Pls.' Opp'n 14.

Defendants reply, in essence, by contesting the credibility of the refusal to admit the authenticity of the documents. See Defs.' Reply Br. 10-11. They assert that Penn and Clymer previously, in the declaratory judgment action, asked this Court to determine the amount of coverage under the policy and stated that the terms of the policy were undisputed, and that, therefore, judicial estoppel should apply here. Defs.' Reply Br. 10-11.

## B. The Relevant Law

The legal standards necessary to resolve this issue are straightforward. As this Court has explained:

> Ordinarily, [on a motion to dismiss,] a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, without converting the motion into one for summary judgment. However, there are a number of exceptions to this rule. Specifically, a court "may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment.

22

Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013) (citations omitted); see also Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) ("While considering a 12(b)(6) motion, we 'may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.''" (citations omitted)); Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (per curiam) ("[T]here are exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").[9]

### C. Analysis

Penn and Clymer have taken a distinctly ostrich-like approach to the statutes of limitations issue in this case. They omitted any and all references to time in their Complaint. Compl. *1-11. They even omitted such basic facts as when the policy over which they are

---

[9] A statute of limitations defense may be decided upon on a motion to dismiss. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Typically, a court may only do so "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Id. (citations omitted). The Court does not read this principle as barring consideration of other materials that may be properly reviewed in resolving a motion to dismiss. See Guerrero v. Weeks, 1:13-cv-837, 2013 WL 5234248, at *4 n.2 (E.D. Va. Sept. 16, 2013) (deciding to consider extrinsic documents in evaluating a statute of limitations defense on a motion to dismiss), aff'd, 555 F. App'x 264, 265 (4th Cir. 2014) (per curiam).

suing was issued and when the accident in this case occurred. Compl. *1-11. They have also omitted reference to documents that might time-stamp the events depicted in their Complaint, such as the declaratory judgment decision. Compl. *1-11. Then, when Defendants proffer documents that establish the omitted timeline, Penn and Clymer (weakly) fight the documents' authenticity. Pls.' Opp'n 13-14. They seem to be hoping that, if they can bury their heads in the sand as to the statutes of limitations issue for long enough, it will go away. Unfortunately for them, it will not. And, Penn and Clymer have failed to hide the relevant timeline well enough to prevent the Court from considering it now.[10]

As set forth above, certain extrinsic documents may be considered on a motion to dismiss so long as the documents' authenticity is not questioned. Here, it is arguable that the authenticity of "[t]he policy documents [Defendants] offer" is disputed. See Pls.' Opp'n 13. So, the Court will not consider those documents.

However, nothing in the Opposition submitted by Penn and Clymer suggests that they dispute any of the other documents relied on by Defendants, i.e., those that are not "policy documents." See Pls.' Opp'n 13-14. There seems to be no quarrel with, for example, the

---

[10] The Court is troubled by this approach to pleading and briefing, particularly where, as here, the dates have been established as a consequence of earlier litigation.

authenticity of the Fourth Circuit's opinion in the declaratory judgment action. See Defs.' Br. F (Canal Ins. Co v. Barker, 358 F. App'x 470 (4th Cir. 2009) (per curiam)). Indeed, they implicitly concede that the declaratory judgment action related to the policy here. See Pls.' Opp'n 14 ("Nor did adequate discovery happen in the earlier declaratory judgment action to allow [Penn and Clymer] to uncover [details respecting when the policy here actually issued]."). At best, Penn and Clymer assert that they never admitted that the policy document offered by the insurer in that action was accurate. Pls.' Opp'n 13-14. But, that relates to the specifics of the policy, not the authenticity of the Fourth Circuit's opinion or its connection to the policy at issue here (whatever its precise terms or contents).[11]

The Fourth Circuit opinion is obviously a public record. It is also independently central to the claims of Penn and Clymer because it resolved the coverage amounts provided by the policy at issue.

---

[11] There can be no doubt that the declaratory judgment action involved the policy at issue here, given the similarities between the declaratory judgment action and this case. According to the Fourth Circuit opinion, the declaratory judgment action dealt with, inter alia: (1) an accident involving Penn and Clymer and Justin Colvard (driving a truck owned by Barker) in Brunswick County, Virginia; (2) an insurance policy issued to Barker that provided $100,000 in coverage, was in force at the time of the accident, and contained no MCS-90 endorsement; and (3) allegations that federal regulations required coverage of $750,000. Defs.' Br. Ex. F 3-5, 16. The Fourth Circuit also observed that 1st Southern was "apparently acting as insurance agent to Barker." Defs.' Br. Ex. F 16.

25

See Defs.' Ex. F 3 ("The district court rejected Appellants' contention that Virginia Code § 46.2-2143 or federal regulations would operate to increase the policy's limit to $750,000 . . . and instead granted Canal's Motion for Judgment on the Pleadings that the policy was limited to the face amount of $100,000 listed on its declaration page. We agree and affirm the judgment."). Cf. Compl. *2 ("But Barker's policy placed by [Defendants] provided only $100,000 in liability coverage, not the $750,000 minimum financial responsibility protection required under federal law."). Accordingly, and because the authenticity of the Fourth Circuit opinion is not disputed, the Court will consider that opinion here.

As discussed above, the Fourth Circuit opinion decided the actual coverage limits of the policy at issue in this case. Even if the policy was issued after coverage took effect, the issuance date could not have been subsequent to a judicial decision respecting its terms. And, the Fourth Circuit opinion made clear that the policy had been issued before the case was submitted for consideration. See Defs.' Ex. F 3. Thus, Defendants must have placed the policy before the date of the decision. The opinion was issued on December 31, 2009. Defs.' Ex. F 1.[12]

_____

[12] The policy actually must have been placed far earlier than the date of the Fourth Circuit decision. The opinion and final order of the district court that the Fourth Circuit opinion affirmed were signed on November 14, 2007 (and filed on November 15, 2007). See Defs.'

## IV. Whether the Statutes of Limitations Have Run

The applicable limitations period is, at most, five years. That period began when the legally insufficient policy was placed by Defendants. This case was filed on November 11, 2017. Even using the date of the Fourth Circuit's opinion in the declaratory judgment action as the accrual date (notwithstanding the fact that the claims quite clearly accrued well before that date), the limitations period would have expired on December 31, 2014. Consequently, the claims presented here by Penn and Clymer are time barred, and DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (ECF No. 7) will be granted.

## CONCLUSION

For the reasons set forth above, the Court will grant DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (ECF No. 7). The Complaint (ECF No. 1) will be dismissed with prejudice.

It is so ORDERED.

_____ /s/ REP _____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: July _18_, 2018

---

Br. Ex. E; Canal Ins. Co. v. Barker, 3:07-cv-339, 2007 WL 3551508 (E.D. Va. Nov. 15, 2007) (ECF No. 45). The district court's opinion, like that of the Fourth Circuit, resolved the actual coverage limits of the policy and showed that the policy had been issued before the district court rendered its decision. Canal, 2007 WL 3551508, at *1, 6-7. Hence, the policy must have been placed before November 14, 2007.